**BUCKNER et al. v. CRAVENS, DARGAN & ROBERTS. (No. 8103.)**

(Court of Civil Appeals of Texas. Galveston. Dec. 21, 1921.)

1. Insurance ☞83(1)—Petition held to state cause of action on subagent's bond.

In action by general insurance agents on subagent's bond, petition *held* to state a cause of action as against general demurrer.

2. Insurance ☞83(1)—Bond furnished general insurance agents by subagent in certain territory held not to protect general agents after appointment as agent in other territory.

Bond furnished general insurance agents by subagent, reciting that subagent had been appointed agent to represent the insurance company "in and for Bowie, Texas, and vicinity," and providing that subagent should pay over to general agents premiums collected and faithfully perform his duties as subagent, did not protect general agents after subagent's agency at Bowie and vicinity had been terminated by mutual consent, and subagent had been appointed as agent in other territory.

Appeal from Harris County Court; John W. Lewis, Judge.

Suit by Cravens, Dargan & Roberts against W. B. Buckner, C. H. Boedecker, I. F. Bradley, G. O. Slaughter, and James Chapman, Judgment for plaintiffs, and defendants other than the first-named defendant appeal. Reversed and rendered.

Donald & Donald, of Bowie, for appellants.
Campbell, Myer & Freeman, of Houston, for appellees.

LANE, J. This suit was brought by appellees, Cravens, Dargan & Roberts, who formerly did business under the firm name of Cravens & Cage, to recover of W. B. Buckner as principal, and C. H. Boedecker, I. F. Bradley, G. O. Slaughter, and James Chapman, as sureties, on a bond executed by them to secure the faithful performance of the duties of W. B. Buckner as an insurance agent.

Among other things, the plaintiffs in substance, alleged that they were engaged in the general insurance business, acting in the capacity of general agents and insurance managers; that on the 15th day of May, 1916, they were doing business under the firm name of Cravens & Cage, and that on said date last named the defendant W. B. Buckner entered into a contract with them, by the terms of which the said Buckner became the subagent of plaintiffs with authority to write insurance in Montague county, Tex., and in such other portions of the state of Texas as should be mutually agreed upon from time to time between the said Buckner and themselves; that said contract prescribed that Buckner should give a bond in the sum of $1,000 payable to Cravens & Cage to secure the faithful performance of his obligations under said contract; that on the 16th day of May, 1916, the said Buckner did execute and deliver to Cravens & Cage the bond provided for in said contract, signed by himself as principal and by the defendants C. H. Boedecker, I. F. Bradley, G. O. Slaughter, and James Chapman as sureties. They alleged, further, that the contract and bond mentioned were both parts and parcel of the same contract and agreement, and that each referred to and supplemented the other; that after the execution and delivery of said contract Buckner at once entered upon his duties as such subagent and continued as such agent until March, 1920. They then alleged that Buckner had failed to pay over to them $904.68 which he had collected for them under his said contract, and that he (Buckner) and his sureties were obligated by said contract and bond to pay to the plaintiffs the said sum of $904.68, together with attorney's fees, which were provided for in said bond.

The defendant Buckner made no answer, and judgment was rendered against him by default, from which he has not appealed.

The defendants C. H. Boedecker, I. F. Bradley, G. O. Slaughter, and James Chapman answered by general demurrer, general denial, and by specially pleading, in substance, they say that they admit that they signed a certain bond as sureties for W. B. Buckner, as principal, but the bond and only bond signed by them as sureties for Buckner was for Buckner as agent of plaintiffs to write insurance in the town of Bowie and vicinity, in Montague county, Tex., and nowhere else, and that it is plainly stated in said bond; that the agency of W. B. Buckner for Bowie and vicinity began on the 16th day of May, 1916, immediately upon the execution of said bond by them, and that it terminated on the 1st day of October, 1916, at which time Buckner sold his business in Bowie to E. M. Stalling & Co., who since said date have been and are now acting as agents of plaintiffs for Bowie and vicinity; that upon the termination of the contract of W. B. Buckner on the 1st day of October, 1916, Cravens & Cage entered into a written contract with E. M. Stalling & Co., whereby E. M. Stalling & Co. were appointed and made the agents of Cravens & Cage at Bowie and its vicinity with the same powers as had theretofore been conferred upon W. B. Buckner, and E. M. Stalling & Co. thereafter entered into bond as agents for Bowie and vicinity; this, as was intended by both Cravens & Cage and W. B. Buckner, was to end and terminate the agency of Buckner and supplant in its stead the agency of E. M. Stalling & Co.; they say that the account sued upon was not made or contracted in 1916, during the time Buckner was agent of Cravens & Cage, but was wholly made in 1918 and 1919 by Buckner at Waco, Tex.,

after he had terminated his agency at Bowie, and had entered into a new contract to represent Cravens & Cage at Waco and vicinity; that the bond executed by them, here sued upon, was not a security for any acts or defaults done or made by Buckner after he terminated his agency contract at Bowie and vicinity, by which his authority to act as agent for Cravens & Cage was restricted to Bowie and vicinity, and did not extend to Waco, or to any territory in the vicinity of Waco. They further say that they received no consideration for signing the bond, but that they signed the same for the accommodation only of W. B. Buckner; that the bond sued upon is clear and definite in its terms and conditions and without ambiguity and in no way refers to the contract between Cravens & Cage and Buckner, and that said contract forms no part of said bond and should not be taken as any part thereof; that, however, if it be held that said contract is a part of said bond, then in that event they say after they signed the bond, and after two years had elapsed, Cravens & Cage, without their consent or knowledge, made changes in said contract whereby the terms thereof were made more onerous than those of the original contract, and therefore they are released from any obligation, if any, assumed by virtue of the first contract.

The court overruled the general demurrer of the defendants, and a jury having been waived, the case proceeded to trial before the court without a jury. After hearing the evidence, the court rendered judgment in favor of the plaintiff Cravens, Dargan & Roberts, who were shown to be the successors of Cravens & Cage, against appellants for the sum of $1,000.

Appellants present three contentions for the reversal of the judgment in favor of the appellees and for the rendition of judgment in their favor, which are, in substance, as follows:

First. That the court erred in overruling appellants' general demurrer.

Second. That the court erred in rendering judgment for appellees and in not rendering judgment for appellants, in that the suit was based upon the bond executed by W. B. Buckner as principal, and appellants as sureties, on the 16th day of May, 1916, which said bond was intended to be executed and was in fact executed and delivered to appellees for the purpose of securing the faithful and full performance of obligations of W. B. Buckner as the agent of appellees to write insurance at Bowie, Tex., and in the territory in the vicinity of Bowie; that said bond is plain, definite, and unambiguous in its terms and conditions, and states fully the obligations thereby assumed by appellants, and does not in any manner, either expressly or impliedly, refer to any contract theretofore existing be-

tween Cravens & Cage and W. B. Buckner, whereby Buckner was appointed agent for Cravens & Cage in the territory of Bowie and vicinity; that the undisputed evidence shows that the agency of W. B. Buckner created by virtue of the contract and bond of May 15 and 16, respectively, was terminated on the 1st day of October, 1916; that on said date Buckner sold all his interest in the insurance business at Bowie and vicinity to Stalling, Thomas & Co., a copartnership composed of E. M. Stalling, Miss Maude Thomas, W. A. Ayers, H. B. Watkins, and A. E. Thomas, with the consent and approval of Cravens & Cage, who at such time accepted and appointed the firm of Stalling, Thomas & Co. as their agent for the town of Bowie, Tex., and vicinity, to supplant and take over the agency formerly held by W. B. Buckner in said territory; that at some time after said Buckner had sold said insurance business to Stalling, Thomas & Co. and terminated his agency in the territory of Bowie and vicinity, he moved to the city of Waco, Tex., some 200 miles or more from the territory of Bowie and vicinity, and on or about the 8th day of July he entered into a new contract with Cravens & Cage or their successors, Cravens, Dargan & Roberts, the present plaintiffs, to represent them as agent for the writing of insurance at Waco and other places; that while acting as such agent under said last-named or new contract, Buckner incurred the indebtedness sued upon by appellees, and that no part of the same was incurred during the former agency of said Buckner at Bowie and vicinity.

Third. That though it be held by this court that the terms and provisions of the contract of May 15, 1916, were a part of the bond executed by appellants and might be looked to in interpreting the bond, and though it be held that the agency of W. B. Buckner did not in fact terminate when he sold his insurance business to Stalling, Thomas & Co. on the 1st day of October, 1916, still appellees were not entitled to recover upon the indebtedness incurred by Buckner at Waco, Tex., for the reason that the undisputed evidence shows that after Buckner went to Waco, Tex., and prior to incurring the debt sued on, appellees, without the consent or knowledge of appellants, added provisions to the original contract of May 15, 1916, whereby said contract was made more onerous than it was originally, thereby undertaking to impose new and additional obligations upon appellants without their knowledge or consent. Therefore appellants were released from any obligation to pay the debt sued upon, and the trial court erred in not so holding.

[1] We overrule the first contention. We think the allegations of plaintiffs' petition, in the absence of the exhibits of the contract and bond recited in the petition as being at-

tached thereto, but which are not so attached, presents a cause of action not subject to the general demurrer of appellants.

[2] We think, however, that the second contention should be sustained. The undisputed evidence shows that Cravens & Cage, by whom Buckner was appointed agent at Bowie and vicinity, were at such time general agents for several insurance companies; that they transacted their business principally through subagents, located in towns in different parts of Texas; that it is not usual to have more than one agent in the same town; that Cravens & Cage entered into a contract with W. B. Buckner on the 15th day of May, 1916, to represent them as their agent at the town of Bowie in Montague county, Tex., and in the territory in the vicinity of said town.

The terms and provisions of the contract above mentioned are as follows:

"This memorandum of agreement made and entered into between Cravens & Cage, of Houston, Texas, party of the first part, and W. B. Buckner, of Bowie, Texas, party of the second part, witnesseth:

"First. That said Cravens & Cage are general agents in Texas for the American Central Insurance Company, and being desirous of procuring agents for writing farm business in Texas, have employed the said W. B. Buckner as an agent or solicitor for farm business in the vicinity of Bowie, Texas, and such other portions of the state of Texas as may be mutually agreed upon from time to time between the said parties hereto.

"Second. The said Buckner at his own expense will solicit applications for insurance on farm business and said applications when taken by him shall be immediately turned into Cravens & Cage, and if in the judgment of said Cravens & Cage the business is desirable they shall issue policy in the terms desired and upon the property desired, but the said Cravens & Cage shall have the right in every case at their sole option and upon their own judgment to refuse to issue any policy on any application for any cause satisfactory to them.

"Third. The said Buckner shall receive as his compensation 25% of the premiums on policies written by said Cravens & Cage, and where policies are canceled for any reason whatsoever shall be charged with return commission at the same rate (whether this contract shall be in force as to its provisions at time policies are cancelled or not). The said Buckner is to use his best endeavors to collect as much cash as possible on all applications taken, this cash, minus agent's commission, to be forwarded to said Cravens & Cage along with the application. In any case where the cash collected is not as much as the commission, the said Buckner will receive no commission until enough cash is collected to cover the same. In any case where the said Cravens & Cage shall decline to write a policy in accordance with the application then the said Buckner shall immediately return to the applicant all cash he has collected.

"Fourth. The said Buckner is to assist said Cravens & Cage in collecting notes given by applicants for premiums on policies written for said Buckner, the said Cravens & Cage to use due diligence in making said collections, but when in their judgment it is not possible to collect they are authorized to cancel the policies on the best terms permitted by the company, and the said Buckner agrees to pay such portions of the unearned premiums that have not been paid to Cravens & Cage, and also the return commission on the unearned premiums.

"Fifth. The said Buckner is to co-operate with the said Cravens & Cage in the instruction of other agents to write farm business. In cases where requested by Cravens & Cage to visit another agent for the purpose of soliciting farm business the said Buckner will be paid his railroad fare to such agent. Said Buckner shall make his own settlement with other agents as to division of commissions, but in no event shall the entire commission paid by the said Cravens & Cage, both to the said Buckner and to the other agent with whom he is soliciting, except 25 per cent. Said Buckner is to note on applications secured when soliciting with another agent the name of such agent and the amount of commission allowed him, so it will be possible to keep track of commission settlements made by him with agents. It is further understood and agreed that the said Buckner is to impress on other agents with whom he shall work the importance of assisting the said Cravens & Cage in collecting notes taken in payment for farm policies.

"Sixth. The said Buckner shall furnish the said Cravens & Cage with a satisfactory bond in the sum of $1,000.00, the said bond to be signed by himself and by two other persons as sureties, these sureties to be worth above all exemptions more than the amount of the bond, and the signatures to be duly witnessed.

"Seventh. If any farmer requests said Buckner to place his insurance in the St. Paul Fire & Marine Insurance Company, then permission is given to submit his application in that company, subject to all terms and conditions of this contract.

"Eighth. This contract may be terminated at any time by either party hereto and no other notice of the termination thereof shall be required than a statement in writing of one party to the other that he has elected to terminate this contract."

That on the 16th day of May, 1916, W. B. Buckner, as principal, and appellants C. H. Boedecker, I. F. Bradley, G. O. Slaughter, and James Chapman, as sureties, executed the following bond:

"Know all men by these presents: That I, W. B. Buckner, doing business under the firm name of W. B. Buckner, as principal, and —— and ——: as sureties, are each held and firmly bound unto Cravens & Cage, managers of the following insurance companies, viz.: American Central Insurance Company, in the sum of one thousand ($1,000.00) dollars, lawful money of the United States of America, to be paid at Houston, Texas, to said Cravens & Cage, managers, or assigns, to which payment, well and truly to be made and done, we bind ourselves, each of us, our and each of our heirs, executors and administrators, and every one of them, jointly and severally, firmly by these presents:

"Whereas, the above bounden W. B. Buckner has been by Cravens & Cage, managers, appointed agent of the said insurance company, to act in that capacity for the obtaining of insurance and other matters pertaining thereto for said company, in and for Bowie, Texas, and vicinity.

"The condition of the above obligation is such that if the above bounden agent shall faithfully and punctually pay over, at Houston,.Texas, to said Cravens & Cage, managers, all sums due, or that may become due to .them as managers aforesaid, from time to time for premiums on policies of insurance, or for any other account whatever; also shall pay the return commission upon any and all return premiums of policies of insurance companies represented by said managers, whether said policies were written by him or by his predecessors in the agency, and shall well and truly perform all the duties of such agent of said company, and comply with all instructions contained in his commissions of authority, and that may be, from time to time, communicated to said agent by said Cravens & Cage, manager, or their proper representatives, and shall, at the termination of the agency, faithfully surrender and deliver to said Cravens & Cage, managers, or their order, all books of record, supplies and other property belonging to said company, or to said 'Cravens & Cage, managers, then this obligation shall be null and void, otherwise to remain in full force and effect.

"We, the undersigned sureties, waive notice of a breach by our principal of any of the provisions of this obligation, and acknowledge of Cravens & Cage, managers, of any breach of this bond shall not relieve us of liability for such breach, or any subsequent breach or breaches of this obligation, nor shall a continuation of the agency after any breach of this bond is known to said Cravens & Cage, managers, avoid this bond, whether such breach occur before or after such knowledge is acquired; and we also waive notice of the state of the account of such agent unless specially requested in writing by us, it being expressly understood and agreed that in case of default of the money due said Cravens & Cage, managers, any notice or other securities given therefor shall be considered additional security only, and that this bond shall not be discharged thereby, nor by any act or thing other than the actual payment in cash of all moneys at any time due, with interest thereon until paid.

"It is further expressly agreed and understood that if at any time the agency of said principal shall be for any reason suspended, and shall thereafter be reinstated, the liability of both the principal and sureties upon this bond shall continue as if no such suspension had occurred.

"And said principal and sureties further obligate themselves to pay any and all attorney's fees, or other charges, or expenses which the said Cravens & Cage, managers, may incur by reason of default of this bond; and agree that in case they should be sued on said bond said suit may be instituted and maintained in any court of Harris County, Texas, having jurisdiction of the amount sued for.

"It is agreed and expressly understood, that this obligation shall be in full force and operative not only as to the insurance company hereinbefore named, but also as to any and all other insurance companies of which the said Cravens & Cage, managers, shall appoint the said W. B. Buckner agent in and for said territory.

"In witness whereof, we have hereunto set our hands this 16th day of May, 1916."

That upon the execution and delivery of said bond Buckner entered upon the performance of his duties under said contract and bond and continued in such performance until the 1st day of October, 1916, at which time he conveyed all his interest in the insurance business at Bowie and vicinity, owned by him by virtue of his appointment as agent of Cravens & Cage, to Stalling, Thomas & Co.; that on the 6th day of October, 1916, one H. C. Crim, special agent of Cravens & Cage, by a letter of that date, wrote said Cravens & Cage recommending the appointment of Stalling, Thomas & Co. as agents at Bowie and vicinity, to take the place of . W. B. Buckner in said territory, and inclosing with such recommendation a bond for .$1,000, executed by Stalling, Thomas & Co., it being stated in said letter that the old agency was discontinued. In this letter Cravens & Cage were requested to rush certain supplies to the new agents, and it was stated therein that the new firm would assume all outstanding balances; that after the receipt of said letter Cravens & Cage approved of the acts of the parties mentioned, as indicated by the same, and forwarded to the new agents, Stalling, Thomas & Co. certain agency supplies, such as fire policies, tornado policies, open policies, one register and certain certificates, with instructions to acknowledge receipt of said supplies, which request was complied with and the receipt forwarded to Cravens & Cage.

The undisputed evidence also shows that at the time W. B. Buckner sold to Stalling, Thomas & Co. on the 1st day of October, 1916, he did not owe 'Cravens & Cage, nor their successors, Cravens, Dargan & Roberts, anything, and that the debt sued upon was contracted long after the agency of Buckner and Bowie and vicinity had terminated and had been by Cravens & Cage discontinued, and that said debt was wholly incurred by' Buckner at Waco, Tex., some 200 or more miles from Bowie, while Buckner was serving as agent under a new contract entered into between him and Cravens & Cage; and that the term "Bowie and vicinity" as used in the bond executed by appellants meant the town of Bowie and that territory using Bowie as its trading point.

We deem it unnecessary to discuss in detail or otherwise the theories so vigorously urged by counsel for the respective parties in support of their respective contentions, as we have reached the conclusion that under the undisputed facts, as above stated, no judgment could have been prop-

erly rendered other than one in favor of appellants.

That the term "agency for Bowie and vicinity" as used in the contract with Buckner of date May 15, 1916, and the bond executed by appellants, means an agency confined to the town of Bowie and that territory commonly known as the trade territory of the town of Bowie, and that one holding an agency to write insurance in a territory so described would be restricted to the town of Bowie and its trade territory is undisputed.

It is, as before stated, also shown by the undisputed evidence that the agency of W. B. Buckner at Bowie and vicinity had by the mutual consent of Buckner and Cravens & Cage ended on the 1st day of October, 1916, long before the debt sued on was contracted, and hence appellants could not be held liable to pay said debt by virtue of their bond executed by them, which was given to secure only the faithful performance by Buckner of his obligations under his original contract of agency.

What has been said rendered it unnecessary to discuss the third contention of appellants.

Having reached the conclusions as above expressed, the judgment of the trial court is reversed, and judgment is here rendered for the appellants.

Reversed and rendered.